THE STATE OF NEVADA, Petitioner, v. THE SECOND JUDI-
CIAL DISTRICT COURT OF THE STATE OF NEVADA, in
and for THE COUNTY OF WASHOE, and THE HONOR-
ABLE JANET J. BERRY, District Judge, Respondents,
and ANNA MARIE JACKSON, Real Party in Interest.

No. 44865

August 11, 2005         116 P.3d 834

[Rehearing denied September 9, 2005]

[En banc reconsideration denied October 7, 2005]

*Brian Sandoval,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Petitioner.

*Kenneth A. Stover,* Reno, for Real Party in Interest.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

This is an original petition by the State for a writ of certiorari or mandamus. The State contends that the district court exceeded its jurisdiction or abused its discretion by awarding Anna Marie Jackson, the real party in interest, credit against her prison sentence for the time she served on house arrest as a condition of bail. NRS 176.055 allows the district court to award credit against the duration of a sentence for time ''actually spent in confinement before conviction.'' For the reasons discussed below, we hold that house arrest is not confinement within the meaning of the statute. Accordingly, we grant the petition and direct the clerk of this court to issue a writ of mandamus.

### FACTS

On September 26, 2002, Reno Police Officer Michael Scofield was responding to an accident when his motorcycle collided with Jackson's vehicle as she attempted to turn onto Mill Street from a private drive. Officer Scofield died as a result of the collision.

A jury convicted Jackson of driving under the influence of a prohibited substance, resulting in death, a violation of NRS 484.3795. Following the verdict and after posting bail, Jackson was placed on house arrest, monitored by way of an electronic bracelet, and subjected to weekly testing for the presence of marijuana. She worked outside of the home from June 2004 to September 2004, and she traveled to California to get married and to Las Vegas to be deposed by an attorney for Officer Scofield's estate.

During sentencing, Jackson asked the district court for a house arrest credit of 297 days, and the Division of Parole and Probation informed the district court that Jackson was entitled to 297 days' credit for time served. The district court followed the Division's recommendation and sentenced Jackson to serve a prison term of 24 to 96 months with 297 days' credit for time served and to pay a fine of $2,000.

After sentencing Jackson, the district court considered her motion for bail pending appeal and concluded that the State needed additional time to respond to the motion. The district court also determined that in the meantime Jackson would remain on house arrest under her previous conditions. The State subsequently filed an opposition to Jackson's request for bail pending appeal and a motion requesting the district court to reconsider its award of credit for time served on house arrest.

The district court granted Jackson's application for bail pending appeal and denied the State's motion to reconsider the sentencing order, finding that:

> The Court followed the recommendation of the Division of Parole and Probation, which included credit for time served while on house arrest pending sentencing. Pursuant to NRS 176.055, Parole and Probation views "residential confinement" as "confinement." The State did not object to the credit for time served, which the Court at imposition of sentence announced orally. The recommendation for credit for time served for house arrest was also in the written presentence investigation report, which the State had in its possession prior to sentencing.

The district court concluded that it did not have jurisdiction to modify Jackson's sentence because it was not based on a materially untrue assumption or mistake that worked to Jackson's detriment, and that the State did not interpose a timely objection to the Division's recommendation of credit for time served while on house arrest. The State then filed the instant petition.

## DISCUSSION

This court may issue a writ of mandamus to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station; control a manifest abuse of discretion; or clarify an important issue of law.[1] A writ of mandamus will not

---

[1] *See* NRS 34.160; *Smith v. District Court,* 113 Nev. 1343, 1345, 950 P.2d 280, 281 (1997); *Round Hill Gen. Imp. Dist. v. Newman,* 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981).

issue if the petitioner has a plain, speedy, and adequate remedy in the ordinary course of law.[2] It is an extraordinary remedy, and therefore the decision to entertain a petition lies within the discretion of this court.[3]

The State does not have an adequate remedy at law because it cannot appeal from a judgment of conviction or an order denying a motion for reconsideration.[4] Further, this petition raises an important issue of law which requires clarification: whether a district court has discretion to credit time spent on house arrest towards a prison sentence. Therefore, we conclude that this court's intervention by way of extraordinary writ is warranted.

The district court's authority to award credit for time spent in presentence confinement comes from NRS 176.055(1), which states in relevant part:

> [W]henever a sentence of imprisonment in the county jail or state prison is imposed, the court may order that credit be allowed against the duration of the sentence, including any minimum term thereof prescribed by law, for the amount of time which the defendant has *actually spent in confinement* before conviction, unless his confinement was pursuant to a judgment of conviction for another offense.

(Emphasis added.) The district court's authority is further defined by our caselaw: *Anglin v. State,* which holds that district courts must allow credit when bail is set for a defendant and the defendant is financially unable to post bail;[5] *Nieto v. State,* which states that credit for presentence confinement is not limited to the situations discussed in *Anglin;*[6] and *Kuykendall v. State,* which states that despite its discretionary language, the purpose of NRS 176.055 is to "ensure that all time served is credited towards a defendant's ultimate sentence."[7] Neither the statute nor the caselaw construing the statute defines "confinement."

The "words in a statute will generally be given their plain meaning, unless such a reading violates the spirit of the act, and

---

[2]NRS 34.170.

[3]*Hickey v. District Court,* 105 Nev. 729, 731, 782 P.2d 1336, 1338 (1989).

[4]*See* NRS 177.015(3); *Castillo v. State,* 106 Nev. 349, 352, 792 P.2d 1133, 1135 (1990) (the right to appeal only exists if a statute or court rule provides for an appeal).

[5]90 Nev. 287, 292, 525 P.2d 34, 37 (1974).

[6]119 Nev. 229, 231-32, 70 P.3d 747, 748 (2003).

[7]112 Nev. 1285, 1287, 926 P.2d 781, 783 (1996).

when a statute is clear on its face, courts may not go beyond the statute's language to consider legislative intent."[8] The dictionary definition of the word "confine" is "to hold within a location," "imprison," or "keep within limits."[9] Thus, "confinement" is a general term whose plain meaning is so broad that the statute is not clear on its face.

A review of the legislative history of NRS 176.055 suggests that the legislative intent was to allow credit for presentence time spent in the county jail. Since becoming law in 1967, NRS 176.055 has been amended three times.[10] During the brief hearings on each of these amendments, committee members and witnesses used the phrase "county jail time" when referring to time "actually spent in confinement."[11] This usage suggests that the Legislature understood "confinement" to be synonymous with county jail time.

Furthermore, allowing credit for time spent on house arrest would defeat the legislative intent of statutes imposing mandatory prison sentences.[12] This case provides a good example. Jackson was convicted under NRS 484.3795. The Legislature specifically amended NRS 484.3795 to add mandatory prison time in response to a public outcry over the tragic deaths and injuries caused by drunk drivers.[13] The statute requires the district court to sentence a defendant to a prison term of at least two years if he or she is convicted of causing death or substantial bodily harm to another while driving under the influence of an intoxicating liquor or a controlled substance.[14] It further prohibits the court from suspend-

---

[8]*Pellegrini v. State,* 117 Nev. 860, 873-74, 34 P.3d 519, 528 (2001).

[9]*Merriam-Webster's Collegiate Dictionary* 242 (10th ed. 1997).

[10]1981 Nev. Stat., ch. 247, § 1, at 479; 1973 Nev. Stat., ch. 94, § 1, at 161; 1971 Nev. Stat., ch. 183, § 1, at 243; 1967 Nev. Stat., ch. 523, § 234.5, at 1433.

[11]*See* Hearing on S.B. 255 Before the Assembly Comm. on the Judiciary, 61st Leg. (Nev., April 29, 1981) (statement of Mr. Campos); Hearing on S.B. 255 Before the Senate Comm. on the Judiciary, 61st Leg. (Nev., March 10, 1981) (statement of Senator Close); Hearing on S.B. 146 Before the Assembly Comm. on the Judiciary, 57th Leg. (Nev., March 6, 1973) (summary of bill attached to minutes); Hearing on S.B. 146 Before the Senate Comm. on the Judiciary, 57th Leg. (Nev., Feb. 8, 1973) (statement of Mr. Campos); Hearing on A.B. 77 Before the Assembly Comm. on the Judiciary, 56th Leg. (Nev., Feb. 10, 1971) (attached letter from the Department of Parole and Probation).

[12]*E.g.,* NRS 176A.100(1) (prison sentences for convictions of murder, first-degree kidnapping, sexual assault, attempted sexual assault of a child, lewdness with a child and for habitual criminal adjudications cannot be suspended); NRS 453.3405 (under most circumstances, prison sentences for drug trafficking convictions cannot be suspended); NRS 484.3792(3) (prison sentences for driving-under-the-influence convictions cannot be suspended).

[13]1981 Nev. Stat., ch. 755, § 6, at 1926-27; *see also* Hearing on S.B. 83 Before the Senate Comm. on Transportation, 61st Leg. (Nev., Feb. 3, 1981).

[14]NRS 484.3795(1).

ing the sentence or granting probation.[15] Clearly the Legislature intended for those convicted under this statute to spend time in prison. We consider it unlikely that the Legislature would have defined "confinement" so broadly as to allow a convicted defendant to circumvent a mandatory prison sentence through time spent on house arrest.

We have previously concluded that an appellant whose probation had been revoked was not entitled to credit for time spent in a residential treatment program as a condition of probation. In *Grant v. State,* we observed that "certain residential drug treatment programs [might] so restrain the liberty of a probationer that residence in such programs is tantamount to incarceration in a county jail," and that "in such cases credit should arguably be granted under *Merna.*"[16] However, we declined to reach that issue because there was no evidence that the residential drug treatment program restrained Grant's liberty, and Grant's contention that he was not free to leave, by itself, did "not necessarily indicate restraints on his liberty akin to incarceration."[17] Notwithstanding this dictum in *Grant,* in *Webster v. State,* we stated that an "[a]ppellant is not entitled to credit for time spent on probation outside of incarceration," and we concluded that "[t]he imposition of residential confinement as a condition of appellant's probation is insufficient to change the character of his probation from a conditional liberty to actual confinement."[18]

Here, Jackson's liberty was restricted by the imposition of house arrest. However, there are substantial differences between her restriction and incarceration in the county jail. Jackson was free to leave her home on advance notice for matters such as grocery shopping, employment, laundry, medical appointments, counseling, and court appearances. As mentioned above, Jackson was even permitted to travel to California to get married and to Las Vegas for a deposition. Additionally, Jackson was allowed to reside in her own home and enjoy all of its comforts. We conclude that Jackson's house arrest was merely a reasonable condition imposed upon her release on bail,[19] and we hold that house arrest does not

[15]NRS 484.3795(2).

[16]99 Nev. 149, 151, 659 P.2d 878, 879 (1983) (citing *Merna v. State,* 95 Nev. 144, 591 P.2d 252 (1979) (which held that a probationer whose probation has been revoked is entitled to credit for jail time served as a condition of probation)).

[17]*Id.*

[18]109 Nev. 1084, 1085, 864 P.2d 294, 295 (1993).

[19]*See* NRS 178.484(8).

constitute time "actually spent in confinement" for which the duration of a sentence may be credited.

Moreover, we believe that to hold otherwise would have a chilling effect on the district court's willingness to impose house arrest. In cases like this, where the defendant is subject to a mandatory prison term if convicted, the district court might hesitate to impose house arrest as a condition of bail if the time spent on house arrest must be credited against the sentence under *Kuykendall*. This is especially true if the duration of the defendant's house arrest is likely to exceed the minimum sentence and render the defendant eligible for parole without having spent a day inside a correctional facility. Our holding allows the district court to impose house arrest as a condition of bail without having to first consider the potential sentencing ramifications. Accordingly, it serves an important policy by making it easier for the district court to impose bail conditions that ensure the defendant's presence in court and the safety of the community.

## CONCLUSION

We grant the State's petition and direct the clerk of this court to issue a writ of mandamus that directs the district court to amend its judgment of conviction by removing the credit awarded for time Jackson served on house arrest. In accord with this holding, we further note that Jackson is not entitled to post-conviction credit for time spent on house arrest during the pendency of her appeal.

Rose and Gibbons, JJ., concur.